UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

CLEVELAND CLINIC HEALTH : 
SYSTEM-EAST REGION, et al., :
 :
       Plaintiffs, :   CASE NO. 1:11-CV-2074
 :
  v. :   OPINION & ORDER
 :   [Resolving Doc. Nos. 26; 66]
INNOVATIVE PLACEMENTS, INC., :
et al., :
 :
       Defendants. :
 :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In February 2008, a patient died in Huron Hospital's emergency room. Plaintiffs Cleveland Clinic Foundation and Cleveland Clinic Health System–East Region d/b/a Huron Hospital (collectively, Cleveland Clinic), later paid the patient's estate $400,000 to settle a wrongful-death claim. Now, Cleveland Clinic sues its nurse-staffing agency, Defendant Innovative Placements, Inc. (IPI), and a nurse, Defendant Richard Briganti, for indemnity. The parties filed cross-motions for summary judgment. [Docs. 26; 66.] For the following reasons, the Court GRANTS IN PART Cleveland Clinic's motion for partial summary judgment and GRANTS IN PART the Defendants' motion for summary judgment.

**I. Background**

Pursuant to a contract termed the Master Supply Agreement (MSA), IPI, a nurse-staffing agency, provides staff—including Nurse Briganti—to work in Cleveland Clinic hospitals. Nurse Briganti was assigned to the Huron Hospital. [Doc. 26.]

Case No. 1:11-CV-2074
Gwin, J.

On February 6, 2008, patient M.D. died in the emergency room of Huron Hospital. Nurse Briganti, along with other non-IPI staff, had provided M.D. care. On December 22, 2009, M.D.'s estate made a wrongful death claim against Cleveland Clinic, and Cleveland Clinic later agreed to toll the statute of limitations to attempt a settlement. The estate made a settlement demand on May 2, 2010—alleging that the standard of care "was not met and was significantly breached by all healthcare providers at Huron Hospital," [Doc. 86-2 at 5]—and on June 4, 2010, Cleveland Clinic notified IPI of the settlement demand and that "the care at issue . . . was that provided by Nurse Briganti," *id*. IPI did not respond, and on September 2, 2010, the Clinic, after further attempts to involve IPI in the negotiation, settled with the estate for $400,000.

Cleveland Clinic later requested reimbursement from the Defendants. They refused. This lawsuit followed. Cleveland Clinic asserts four claims for relief: (1) indemnity arising from a written contract (the MSA); (2) indemnity arising from an implied contract; (3) contribution; and (4) unjust enrichment. The Defendants argue that they are entitled to summary judgment on each of Cleveland Clinic's claims. For its part, Cleveland Clinic says it is entitled to summary judgment on the issue of express indemnity and attorneys' fees. The Court agrees, in part, with Cleveland Clinic.

## II. Legal Standard

"In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). And "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Case No. 1:11-CV-2074
Gwin, J.

### III. Analysis

IPI and Cleveland Clinic's contractual relationship is governed by the MSA, subject to Ohio law. Cleveland Clinic claims that pursuant to Clause X(A) of the MSA, IPI was required to indemnify Cleveland Clinic against the settlement with M.D.'s estate. "[A]bsent specified public policy exceptions," which do not apply in case, *see* Ohio Rev. Code §§ 2305.31, 4123.82, "the law of Ohio generally allows enforcement of indemnity agreements." *Glaspell v. Ohio Edison Co.*, 29 Ohio St. 3d 44, 46 (1987). Finding no public-policy bar, then, the Court will first address the Defendants' argument that Clause X(A) is ambiguous.

A. Ambiguity

The Defendants first claim that they are entitled to summary judgment. They argue the indemnity clause, Clause X(A), is ambiguous and therefore unenforceable. They are wrong.

Courts "interpret indemnity agreements the same way they interpret contracts," *Papatheodorous v. Clark*, 781 F. Supp. 2d 582, 586 (N.D. Ohio 2011), which is to say they "give the terms of the contract their plain and ordinary meaning." *Bank One, N.A. v. Echo Acceptance Corp.*, 522 F. Supp. 2d 959, 972 (S.D. Ohio 2007). Accordingly, "[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given *a* [*single*] definite legal meaning." *Westfield Ins. Co. v. Galatis*, 100 Ohio St. 3d 216, 219 (2003) (emphasis added) (citation omitted).

Clause X(A) provides:

> [IPI] shall indemnify and hold harmless . . . [Cleveland Clinic], [its] members, shareholders, directors, employees, agents, successors and assigns against all actions, claims and demands whatsoever, including costs, expenses and attorneys' fees resulting from or claimed to have resulted from any intentional or negligent acts, errors, omissions or statutory violations of [IPI] or Agency Personnel [Briganti]

-3-

Case No. 1:11-CV-2074
Gwin, J.

> engaged in the fulfillment of this Master Agreement at the time of the event or occurrence which such action, claim or demand is based. This indemnification specifically provides for indemnitor liability for contribution or percent of liability under applicable Ohio law.

[Doc. 45-1 at 24.]

Clause X(A)'s terms "are clear and precise in their allocation of the risk of doing business," *Glaspell*, 29 Ohio St. 3d at 48, and can be given a single, definite legal meaning. It unambiguously says that IPI "shall indemnify" Cleveland Clinic "against all actions . . . resulting from or claimed to have resulted from any intentional or negligent errors" of Richard Briganti "engaged in the fulfilment of" the MSA. That is, where an IPI employee is negligent—or is claimed to be negligent—and a claim or demand or action arises therefrom, IPI must indemnify Cleveland Clinic.

The Defendants couch their arguments in terms of ambiguity, but their argument is that the indemnification clause is broad: "It indemnifies against 'all actions, claims or demands whatsoever' without limitation of any kind as to who is making claim, for what, or why"; and "a narrow construction of Clause X(A) is destroyed by its last sentence, that blends contribution into indemnity which is impossible under Ohio law." [Doc. 26 at 7-8.] But a broad indemnity agreement is not necessarily an ambiguous one. *See Columbus v. Alden E. Stilson & Assocs.*, 630 N.E.2d 59, 63 (Ohio Ct. App. 1993) ("The clear and unambiguous language of the indemnification agreement is enforceable, despite its very broad scope."). Furthermore (and despite the Defendants' argument to the contrary), Clause X(A) is similar to the indemnity clause in *Allen v. Standard Oil Co.*, 2 Ohio St. 3d 122, 124 (1982), which the Ohio Supreme Court upheld as enforceable.

Accordingly, the Court rejects the Defendants' argument that Clause X(A) is ambiguous and unenforceable and turns to the issue whether the indemnity provision applies to the current dispute

Case No. 1:11-CV-2074
Gwin, J.

between the parties.

B. Express Indemnity

Cleveland Clinic moves for partial summary judgment, claiming that it is entitled to indemnity under the express terms of the MSA. "When an indemnitor expressly agrees to indemnify an indemnitee except in certain specified instances, and it is determined that the exceptions do not pertain, the indemnitor is obligated to indemnify the indemnitee under the terms of the agreement." *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St. 3d 238, 241 (1987).

Under the MSA, IPI agreed to indemnify Cleveland Clinic for a specific thing: "all actions, claims and demands whatsoever . . . resulting from or claimed to have resulted from any intentional or negligent errors . . . of Agency Personnel engaged in the fulfillment of" the agreement. Several pieces are not at issue—everyone agrees that M.D.'s estate made a demand and that Nurse Briganti was "engaged in the fulfillment of" the agreement when he provided care to M.D. But the parties very much disagree over whether the estate's demand "result[ed] from or [was] claimed to have resulted from" Nurse Briganti's negligence.

The Defendants argue that indemnification is inappropriate because there were other negligent actors and that they "should not be burdened with . . . [the] extraordinary indemnification obligation" for the negligence of the entire Cleveland Clinic.[1/] And they point out that the estate's demand implicated staff other than Briganti: "Our experts unequivocally state that the standard of care was not met and was significantly breeched [sic] by all healthcare providers at Huron Hospital." [Doc. 86-2 at 5.]

---

[1/]Defendants' expert opined, "It is my opinion based on a reasonable degree of nursing certainty that Nurse Briganti adhered to the standard of care in his care of Mr. Daniels on February 05, and 06, 2008." [Doc. 86-4 at 4.]

Case No. 1:11-CV-2074
Gwin, J.

But again, Clause X(A) is quite broad. It requires only demands "claimed to have resulted from an IPI employee's" negligent acts. And Cleveland Clinic has provided undisputed evidence that the estate's demand was, at least in part, attributable to acts taken (or not taken) by Nurse Briganti. In fact, the estate's demand letter says that their experts will "state that with adequacy of appropriate observation, applicable monitoring, treatment interventions and reassessments continuously, [M.D.] would not have died." And there is no genuine dispute that Nurse Briganti was—at least in part—responsible for charting, monitoring, and observing M.D. He testified to that fact. [Doc. 46 at 54-56, 66.] Moreover, the estate's attorney confirms that "the records showed an apparent failure to monitor the patient . . . [,] [and] this nurse's documentation was extensively inaccurate. This negligence, by the nurse assigned to monitor [M.D.] was the focus of our case and the acts and omissions that we believed could readily be linked to the patient's death." [Doc 66-6 at 4.]

The Defendants' expert reports are not to the contrary. [*See* Doc. 86-3; 86-4; 86-6.][2/] Even if Nurse Briganti did adhere to the standard of care, the estate *claimed* its demand resulted from his negligence and the tasks assigned to him. The Court finds, therefore, that the estate's demand was claimed to have resulted, at least in part, from Nurse Briganti's negligent acts.

Of course, that is not to say that the *entire* demand resulted from or was claimed to have resulted from Briganti's negligence. A genuine issue of fact remains: how much of the fault is attributable to Briganti? Clause X(A) "specifically provides for indemnitor liability for contribution or percent of liability under applicable Ohio law." [Doc. 45-1 at 24.] The parties have not attempted to apportion fault by percentage and the Court cannot do so on the current record. Accordingly, Cleveland Clinic is legally entitled to indemnification from IPI, but the amount is an issue of fact to

---

[2/]Cleveland Clinic objects to the admissibility (and competency) of the Defendants' experts. [Doc 88.] The Court declines to address that issue here, as it is unnecessary to the holding.

Case No. 1:11-CV-2074
Gwin, J.

be resolved at trial.[3/]

C. *Comer* and *Van Doros*

The Defendants raise two other arguments in support of their motion for summary judgment: (1) they are independent contractors, thus indemnity is barred by *Comer v. Risko*, 106 Ohio St. 3d 185 (2005); and (2) Cleveland Clinic was primarily liable for M.D.'s death, thus indemnity is barred by *Van Doros v. Marymount Hospital, Inc.*, 2007 WL 764728 (Ohio Ct. App. March 15, 2007). These arguments are absurd.

*Comer* decided the "narrow issue . . . whether . . . a viable claim exists against a hospital under a theory of agency by estoppel for the negligence of an independent-contractor physician when the physician cannot be made a party because the statute of limitations has expired." 106 Ohio St. 3d at 185. Agency by estoppel is not the issue in this case—an express contract is. *Comer*'s holding is inapplicable, and Cleveland Clinic's breach of contract is subject to a fifteen-year statute of limitations. Ohio Rev. Code § 2305.06.

*Van Doros*, which also involved implied indemnity (not an express contract), is similarly unhelpful. 2007 WL 764728 at *4. The MSA controls the parties' agreement, so questions of primary and secondary liability are irrelevant.

D. The Cleveland Clinic's Remaining Claims

The Defendants also seek summary judgment on Cleveland Clinic's other three causes of action (implied indemnity, contribution, and unjust enrichment). Because, as Cleveland Clinic points

---

[3/]The additional requirements set out in *Globe Indemnity Co. v. Schmitt*, 142 Ohio St. 595 (1944), are inapplicable to this case. Like many of the cases the Defendants cite, *Globe* involves implied—not contractual—indemnity. *See, e.g.*, *Aetna Cas. & Sur. Co v. Hensgen*, 22 Ohio St. 2d 83, 93 (1970) ("[*Globe* and *Maryland Casualty*] relate to the right of a tort-feasor, who is secondarily liable, or the assignee or subrogee of such tort-feasor, to recover indemnity from a tort-feasor primarily liable."). And as Cleveland Clinic correctly argues, applying the *Globe* factors here is contradictory to the terms of the express agreement between the parties.

-7-

Case No. 1:11-CV-2074
Gwin, J.

out, the Court has already determined that Cleveland Clinic is entitled to express indemnity under the terms of the contract, those "remaining theories of recovery are moot." [Doc. 48 at 18]; *see also McClorey v. Hamilton Cnty. Bd. of Elections*, 720 N.E.2d 954, 957 (Ohio Ct. App. 1998) ("[A]n implied obligation cannot arise where an express contract covers a particular term."). Accordingly, the Court grants judgment for the Defendants on Cleveland Clinic's separate implied indemnity, contribution, and unjust enrichment claims.[4/]

E. Attorneys' fees

Cleveland Clinic also moves for summary judgment on the issue of attorneys' fees, arguing that it is entitled to fees "in negotiating the $400,000 settlement payment and in bringing this action to enforce its indemnity rights." [Doc 66-1 at 12]. The Court agrees.

First, the MSA unambiguously provides for indemnification as to fees that the Cleveland Clinic incurred "in negotiating the $400,000 settlement payment"—the settlement, and corresponding attorneys' fees, was claimed to have resulted from Nurse Briganti's negligence. The Defendants' only response—that the estate's claim did not proceed to litigation and thus the Clinic has no attorney fees to recover—is ridiculous. As this Court understands the legal market, attorneys do not collect payment solely upon the filing of a lawsuit. And (at the risk of causing Defendants' counsel some distress over past uncharged fees) pre-lawsuit negotiations, claims evaluations, depositions, and the like need not be complimentary services. Cleveland Clinic is entitled to "costs, expenses, and attorneys' fees" incurred in settling the estate's claim, in an amount proportional to the amount of fault attributable to Nurse Briganti's negligence.

Second, the Cleveland Clinic is entitled to its "costs, expenses, and attorneys' fees" incurred

---

[4/]As previously noted, Cleveland Clinic may seek contribution as permitted by Clause X(A) of the MSA.

-8-

Case No. 1:11-CV-2074
Gwin, J.

in prosecuting *this* lawsuit. Under the terms of Clause X(A), IPI agreed, quite broadly, to "indemnify and hold harmless [Cleveland Clinic, against] all actions, claims and demands whatsoever, including costs, expenses and attorneys' fees resulting from" Briganti's negligence [Doc. 45-1 at 24]. That broad indemnification requires IPI to defend Cleveland Clinic from third-party actions, and encompasses fees for recovery from IPI itself.

In *Allen*, 2 Ohio St. 3d at 126, the Ohio Supreme Court held that "when an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, including attorney fees and expenses, incurred by the indemnitee in defending the initial action and in vindicating its right to indemnity in a third-party action brought against the indemnitor." The Ohio Supreme Court later distinguished indemnity agreements for attorneys' fees (enforceable) from breach-of-contract penalty provisions in the sole interest of one party (unenforceable). *Worth*, 32 Ohio St. 3d at 242. And in *Bank One, N.A. v. Echo Acceptance Corp.*, 380 F. App'x 513, 526 (6th Cir. 2010), the Sixth Circuit reasoned that "because defendants failed to abide by the terms of their agreements, [plaintiff] incurred attorneys' fees and costs associated with the [prior] litigation and the present case. As such, Ohio law allows for [the plaintiff] to be made whole and recover its attorneys' fees."

Here, too, Ohio law allows Cleveland Clinic to recover its attorneys' fees. IPI and Cleveland Clinic's agreement is not one-sided: under Clause X(E) of the MSA, the Clinic similarly agreed to indemnify IPI for attorneys' fees and expenses. Moreover, the attorneys' fees here do not amount to a penalty—X(A) is an indemnity clause, not just a tacked-on provision for attorneys' fees upon breach of contract. *Compare Worth*, 32 Ohio St. 3d at 242 (not a penalty), *with K&A Cleaning, Inc. v. Materni*, 2006 WL 104147477 at *3 (Ohio Ct. App April 21, 2006) ("[B]ecause the attorney's fee

-9-

Case No. 1:11-CV-2074
Gwin, J.

provision only requires appellee to pay appellant's attorney's fees in case of breach while require nothing from appellant . . . the provision obviously works as a penalty, and . . . promotes litigation."). Indeed, the Sixth Circuit has recognized that Ohio law distinguishes between contract-based attorneys fees and indemnity clauses. *Big Lots,* 302 F. App'x at 428-29 (no indemnity-based attorneys' fees where the plaintiff "sued to receive a declaratory judgment that it is entitled to indemnification should a third party sue.") Accordingly, Ohio law allows Cleveland Clinic "to be made whole and recover its attorneys' fees" for the present suit. 380 F. App'x at 526.

## IV. Conclusion

For the foregoing reasons, the Court finds that Cleveland Clinic is entitled to express indemnity and attorneys' fees as a matter of law and therefore GRANTS IN PART Cleveland Clinic's motion for partial summary judgment. The Court also GRANTS IN PART the Defendants' motion for summary judgment, on the issues of implied indemnity, contribution, and unjust enrichment but DENIES the remainder of the Defendants' motion.

IT IS SO ORDERED.


Dated: June 4, 2012             s/        *James S. Gwin*
                                JAMES S. GWIN
                                UNITED STATES DISTRICT JUDGE